## DREYFUS et al. v. PATERSON STEAMSHIPS, Limited.

District Court, W. D. New York.

July 6, 1932.

See, also (D. C.) 35 F.(2d) 353; (C. C. A.) 43 F.(2d) 824, 72 A. L. R. 242.

Bigham, Englar, Jones & Houston, of New York City, and Burke & Desmond, of Buffalo, N. Y. (Henry N. Longley, of New York City, and Thomas C. Burke, of Buffalo, N. Y., of counsel), for libelants.

Holding, Duncan & Leckie, of Cleveland, Ohio (Frederick L. Leckie, of Cleveland, Ohio, of counsel), for respondent.

ADLER, District Judge.

The Circuit Court of Appeals sent this case back to the District Court with the following language: "Decree reversed; cause remanded to be reheard upon the issue above mentioned." 43 F.(2d) 824, 828. The issue above mentioned referred to the condition and efficiency of the pumps on the ship. The Circuit Court said in its opinion: "The

libelants have, however, raised a defect in construction which calls for new proof that we cannot satisfactorily take ourselves." It then refers to testimony as to the number of pumps on the ship and the condition of the pumps. The opinion continues: "The only evidence in the record is that this made the ship unseaworthy, and while we are not satisfied that this conclusion must inevitably be true, we see no way to disregard the undisputed testimony of two qualified witnesses. The issue was apparently allowed to go by default, and we must send back the case to determine whether the arrangement and condition of the pumps, bulkheads and valves were such as to make the ship seaworthy. On the new trial no evidence is to be received which is not pertinent to this, and the respondent has the burden upon it."

Upon the new trial the respondent produced six witnesses all of whom testified that the pumps were in good-working order, that they were well equipped with suctions, and were fitted with suitable cocks and valves. They testified generally that the pumps were adequate for all of the requirements of the ship. It was brought out that the pumps on a ship are not designed to take care of a big hole in the side of the ship with water freely coming in.

The testimony with reference to the bulkheads was that there were two bulkheads, a forward or collision bulkhead and an after bulkhead in front of the engine room. There was a sluice valve in the forward bulkhead, and there were limber holes in the after bulkhead. It was testified that water-tight bulkheads are not required by the Canadian law, and it was testified further by a witness who was a United States steamboat inspector that under the United States rules it was not interpreted that in freight ships the bulkheads should be water tight. Another witness, a naval architect, an officer of the Marine Bureau of Shipping, and a designer of many lake ships, testified that limber holes were proper for a ship of this type, and that this ship complied with the rules of the American Bureau of Shipping. All of the six witnesses for the respondent who examined the pumps, bulkheads, and valves testified that the ship was entirely seaworthy in these respects.

The libelants produced two witnesses who testified that in these respects the ship was unseaworthy. These witnesses did not examine the ship until about three years after the accident which resulted in its sinking. One of them was a ship surveyor for the United States Salvage Association. He said that he found one of the pumps in good condition but the others in bad condition. He testified that if all of the pumps were in good condition they would be adequate for ordinary conditions. His opinion was that the seaworthiness of a composite ship required water-tight bulkheads. He based his general opinion of the unseaworthiness of the ship on the fact that the bulkheads in this ship were not water tight and that the pumps as he found them were not all in good condition. The other witness for the libelants was a marine surveyor. His testimony was that the general service pump was found by him to be in good condition and that another pump was in fair condition. In his opinion the ship was unseaworthy because the pumps were not operating efficiently and because the bulkheads were not water tight. He testified, however, on cross-examination, that there is no requirement that bulkheads be made water tight in wooden or composite ships.

I must find from the testimony on the second trial that the ship was seaworthy as to pumps, bulkheads, and valves. I find no reason for questioning the testimony of the witnesses who examined the ship at the time and before this accident and who testified as to its seaworthiness in these particulars. The testimony of the witnesses for the libelants who testified to the unseaworthiness of the ship in these particulars did not examine it until three years after the accident, during which time it had been laid up and no effort had been made to keep it in condition.

In my opinion the respondent has sustained the burden laid upon it to prove seaworthiness on the issue as defined in the opinion of the Circuit Court of Appeals, and the libel is dismissed.